IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

PATTY D. BROWN                                                                                    PLAINTIFF

               v.                             Civil No. 04-1071

JO ANNE B. BARNHART,
Commissioner, Social
Security Administration                                                                           DEFENDANT

## MEMORANDUM OPINION

### Factual and Procedural Background:

The plaintiff in this case has appealed the final decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner"), denying her claim for a period of disability and disability insurance benefits (hereinafter "DIB"), pursuant to §§ 216(i) and 223 of Title II of the Social Security Act (hereinafter "the Act"), *42 U.S.C. §§ 416(i)* and *423*. Both parties have filed appeal briefs (Doc. #5 & 6). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *42 U.S.C. § 405(g)*.

The history of the administrative proceedings is contained in the respective appeal briefs and will not be recounted here except as necessary.

The plaintiff asserts disability due to: status post right wrist fracture; burns of the lower extremities; and, left eye blindness. The issue before this Court is whether the Commissioner's decision is supported by substantial record evidence. Specifically, the plaintiff asserts that the ALJ: did not consider her impairments in combination; failed to order an independent medical examination; improperly evaluated her credibility; and, improperly found that she was capable

-1-

of returning to her past relevant work. (Doc. #5, p. 5-6).

The Commissioner has established, by regulation, a five-step sequential evaluation for determining whether an individual is disabled.

The first step involves a determination of whether the claimant is involved in substantial gainful activity. *20 C.F.R. § 404.1520(b)*. If the claimant is, benefits are denied; if not, the evaluation goes to the next step.

Step 2 involves a determination, based solely on the medical evidence, of whether the claimant has a severe impairment or combination of impairments. *Id., § 404.1520(c); see 20 C.F.R. § 404.1526.* If not, benefits are denied; if so, the evaluation proceeds to the next step.

Step 3 involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment which is presumed to be disabling. *Id., § 404.1520(d)*. If so, benefits are awarded; if not, the evaluation continues.

Step 4 involves a determination of whether the claimant has sufficient residual functional capacity, despite the impairment(s), to perform past work. *Id., § 404.1520(e)*. If so, benefits are denied; if not, the evaluation continues.

Step 5 involves a determination of whether the claimant is able to perform other substantial and gainful work within the economy, given claimant's age, education and work experience. *Id., § 404.1520(f)*. If so, benefits are denied; if not, benefits are awarded.

The plaintiff's current application was filed on August 20, 2001, and alleged an onset date for disability of April 20, 2001 (T. 50-53, 65, 89). An administrative hearing was held on April 21, 2003 (T. 736-765), after which the ALJ issued his written decision, dated September 18, 2003, containing the following relevant findings:

1. The claimant met the disability insured status requirements of the Act on April 20, 2001, the alleged onset date of disability, and continued to meet them through only July 30, 2002.

3. The medical evidence establishes that the claimant has a history of diagnoses of and/or treatment for a blind right eye, a fracture of the right wrist and burn injuries to both lower extremities (Exhibits B-1F through B-4F), which are "severe" impairments within the meaning of the Social Security Act. However, she does not have an impairment or combination of impairments listed in or medically equal in severity to an impairment contained in the Listing of Impairments in Appendix 1 to Subpart P of Regulations No. 4.

4. The claimant's testimony and subjective allegations as to the extent of her symptoms, limitations and restrictions are found to be credible only in so far as they are supported by the evidence of record and only to the extent that she is limited to the performance of no more than sedentary and or light work activity.

5. The claimant has the residual functional capacity to perform broad range of light work activity. (If an individual can perform light activity, it is also determined that she can perform sedentary work activity). The claimant has the residual functional capacity to occasionally lift up to 20 pounds and to frequently lift or carry objects weighing up to 10 pounds. She can also sit for at least ½ hour to 2 hours without interruption and for a total of about 6 hours in an 8-hour workday. She also has postural limitations in the areas of being able to only occasionally perform activities like balancing, stooping, and crouching; has manipulative limitations in the areas of being unable to perform activities like constant reaching and grasping; and has environmental limitations in the areas of having to avoid being exposed to temperature extremes and/or safety hazards such as unprotected heights and/or moving machinery. She experiences no more than mild to moderate pain that does not required (sic) medication and does not significantly affect her ability to concentrate, and she has no mental restrictions.

6. Vocation expert testimony has established that the claimant's past work as an office manager and government eligibility worker was skilled work performed at the sedentary exertional level.

AO72A
(Rev. 8/82)

7. Vocation expert testimony has also established that the limitations and/or restrictions caused by the claimant's impairment do not precluded (sic) the performance of her vocationally relevant past work. The claimant therefore has the residual functional capacity to perform her vocationally relevant past work and is capable of returning to that past work (20 CFR §§ 404.1565).

8. The claimant has not been under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR §§ 404.1520(e).

(T. 19-20).

**Applicable Law:**

This court's review is limited to whether the decision of the Commissioner to deny disability benefits to the plaintiff is supported by substantial evidence on the record as a whole. *Lorenzen v. Chater, 71 F.3d 316, 318 (8th Cir.1995)*. Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion. *Pickney v. Chater, 96 F.3d 294, 296 (8th Cir.1996)*. The undersigned must consider both evidence that supports and evidence that detracts from the Commissioner's decision, but the denial of benefits shall not be overturned even if there is enough evidence in the record to support a contrary decision. *Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir.1996) (*citing *Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir.1993)*. The decision should not be reversed "merely because substantial evidence would have supported an opposite conclusion." *Harris v. Shalala, 45 F.3d 1190, 1193 (8th Cir.1995)* (citation omitted).

Moreover, the court's review is not simply "a rubber stamp for the [Commissioner's] decision and involves more than a search for evidence supporting the [Commissioner's] findings." *Tome v. Schweiker, 724 F.2d 711, 713 (8th Cir.1984)*. Indeed, "[t]o determine

AO72A
(Rev. 8/82)

whether existing evidence is substantial, '[the court] must consider evidence that detracts from the [Commissioner's] decision as well as evidence that supports it.' " *Warburton v. Apfel, 188 F.3d 1047, 1050 (8th Cir.1999)* (quoting *Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir.1993))*. In addition, the court's review of the decision must include a determination as to whether the proper legal standards were applied. *See Nettles v. Schweiker, 714 F.2d 833, 835-36 (8th Cir.1983)*. Thus, this court's review is both limited and deferential to the agency. See *Ostronski v. Chater, 94 F.3d 413, 416 (8th Cir.1996)*.

The plaintiff bears the burden of proving that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which is expected to last for at least 12 months or result in death. *42 U.S.C. § 423(d)(1)(A)*. See also, *Ingram v. Chater, 107 F.3d 598, 601 (8th Cir.1997); Nettles v. Schweiker, 714 F.2d 833, 836 (8th Cir.1983)*. Further, the plaintiff has the burden of showing that she is not able to perform her past relevant work. *Barrett v. Shalala, 38 F.3d 1019, 1024 (8th Cir.1994)*. Thus, the plaintiff has a responsibility to present the strongest case possible. See *Thompson v. Sullivan, 928 F.2d 255, 260 (8th Cir.1991)*.

42 U.S.C. § 423(d)(1)(A) states:

(1) The term "disability" means-

(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months····

Section 404.1505(a) states:

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to last
for a continuous period of not less than 12 months. To meet this definition, you
must have a severe impairment, which makes you unable to do your previous
work or any other substantial gainful activity which exists in the national
economy. To determine whether you are able to do any other work, we consider
your residual functional capacity and your age, education, and work experience.
We will use this definition of disability if you are applying for a period of
disability, or disability insurance benefits as a disabled worker, or child's
insurance benefits based on disability before age 22....

Section 404.1509 states:

Unless your impairment is expected to result in death, it must have lasted or
must be expected to last for a continuous period of at least 12 months. We call
this the duration requirement.

The term "durational impairment" has been interpreted in several circuit courts of appeals. *See Alexander v. Richardson, 451 F.2d 1185 (10th Cir.1971); Titus v. Sullivan, 4 F.3d 590, 594 (8th Cir.1993).* In *Alexander v. Richardson,* the claimant argued that if his impairment extended for a period of one year or more, he was entitled to benefits even if his inability to engage in substantial gainful activity lasted only for a lesser period. *Alexander v. Richardson, 451 F.2d at 1186.* The Tenth Circuit held that the purpose of the statute and its legislative history support the Commissioner's interpretation that it is the disability which must be continuous for 12 months, rather than the impairment. *Id.*

In *Titus v. Sullivan,* the court reasoned that:

Disability is established by showing a medically determinable mental or physical
impairment which prevents engaging in any gainful activity. Inability to engage
in any gainful activity and the impairment which causes it cannot be separated.
The two components of disability must exist at the same time. The statute, which
defines disability, not impairment, speaks only of an impairment which can be
expected to result in death or to last for a continuous period of at least twelve
months and one which will disable a person seeking disability benefits for a like
period.

AO72A
(Rev. 8/82)

*Titus v. Sullivan, 4 F.3d at 594.*

The court further "observed that although a person who has lost one hand has an impairment for life, he is not entitled to disability benefits if he is able to return to gainful activity within one year of his injury." *Id.*

The undersigned agrees that in order for a plaintiff to meet the Act's durational requirement, she must demonstrate that she was unable to engage in substantial gainful activity due to her impairment for twelve consecutive months.

Further, when making determinations regarding the credibility of a plaintiff's subjective allegations of pain, *Polaski v. Heckler, 739 F.2d 1320 (8th Cir.1984),* requires the administrative factfinder to examine such matters as: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and, (5) functional restrictions. *Polaski,* 739 F.2d at 1322. When rejecting a plaintiff's complaints of pain, however, the ALJ must make an express credibility determination detailing his reasons for discrediting the testimony. *Ricketts v. Secretary of H.H.S., 902 F.2d 661, 664 (8th Cir.1990).*

**Discussion:**

At the outset, the undersigned notes that the plaintiff's onset date is April 20, 2001, yet she has not sought any medical treatment for any of her alleged impairments since January 17, 2002, or 15 months prior to the administrative hearing. While plaintiff alleged for the first time in her appeal brief that her disability is due, in part, to cirrhosis of the liver, the record contains only one medical record that mentions this alleged impairment. On July 10, 2001, Dr. C.H. Fohn observed:

> The patient is an ex-alcoholic. Had bad cirrhosis of the liver initially. Recently her liver enzymes had been back to normal, as well as bilirubin has dropped back to normal.

(T. 108). At hearing, the plaintiff testified she had been sober "since the Saturday before Easter Sunday two years ago." (T. 747). Thus, there is no evidence to support a new allegation of severe cirrhosis.

Plaintiff was hospitalized for alcohol dependency from April 29, 2001 through May 5, 2001 (T. 665-700). During her stay, it was discovered that plaintiff had fallen on some steps the day before her admission, injuring her right wrist (T. 668, 697). On May 5, 2001, x-rays of the right forearm revealed "a fracture of the distal radius, comminuted with an ulnar styloid avulsion with good position and alignment." (T. 665, 697). At hearing, the plaintiff testified that her arm was set incorrectly, and that in order to correct it "they're going to have to go back and rebreak my bones and my bones were too brittle. They're too thin to do that again." (T. 749). However, there is no substantiation for this claim in the record. To the contrary, plaintiff also testified that she has not had any orthopedic care for her right arm, since she left the hospital. She further stated that Dr. Fohn had prescribed physical therapy for her legs, but not for her arm (T. 750-751). Plaintiff testified that she could write, albeit slowly (T. 750). Indeed, plaintiff completed her own agency disability reports (T. 65-68, 75-79, 89-97). At her last visit to Dr. Fohn on August 23, 2001, plaintiff reported a little soreness in the right arm. There is no evidence of further treatment for the right wrist fracture. The only additional complaints about the wrist came in plaintiff's testimony at the hearing in April, 2003.

The main focus of plaintiff's testimony concerning disability concerned her legs. On May 5, 2001, while in the hospital for alcohol dependency, plaintiff accidentally caught her

AO72A
(Rev. 8/82)

clothes on fire with a lighted cigarette. This incident caused burns to both legs and required transfer from the chemical dependency unit to the hospital's emergency room (T. 332, 665, 668). The burns have been categorized as both first and second degree, and second and third degree, and the total burn area was estimated approximately 16-20% of her body (T. 98, 150, 193, 233-234, 238, 248, 334-336, 339, 398, 665-666). Plaintiff remained in the hospital until June 26, 2001, during which time she underwent several debridement treatments, bilateral skin grafts in several places and physical therapy treatments (T. 98, 151-155, 248, 476-480, 652-659). Again, at her last visit to Dr. Fohn on August 23, 2001, plaintiff reported that the donor sites and some of the other areas were a little sensitive to touch. Dr. Fohn noted that "Patty has really done well as far as the burns go." (T. 98). After discharge from the hospital, plaintiff underwent physical therapy on three to four occasions from November 29, 2001 through January 17, 2002 (T. 725-729). On January 17, 2002, the doctor reported her wounds to be healed, although plaintiff complained of itching and parathesis type pain (T. 725). The doctor also determined her range of motion was unlimited, and no further surgical correction was needed (T. 725).

Plaintiff also asserts disability due to left eye blindness,[1] testifying that she became blind in her left eye when stung by a wasp on July 23, 1998, some three years prior to her alleged onset date, and during which time she engaged in substantial gainful activity (T. 748). However, the record contains no evidence of treatment for the eye, during the relevant time

---

[1] As the defendant has pointed out, in his decision, the ALJ stated that the plaintiff asserts she is blind in her right eye (T. 13), yet at hearing he correctly noted plaintiff contends she is blind in her left eye, and not her right eye (T. 761). The undersigned agrees that this mistake is harmless error and has no practical impact on the outcome of the case, nor does it alter the finding of no disability. See *McGinnis v. Chater, 74 F.3d 873, 875 (8th Cir.1996)*.

AO72A
(Rev. 8/82)

period. Plaintiff testified that she required reading/magnifying glasses for her right eye, to help her read (T. 740-741, 753). Although she reportedly possessed a prescription for glasses, plaintiff testified that her doctor stated there was no need for plaintiff to purchase them (T. 753).

Accordingly, we note that the plaintiff has presented evidence of treatment for only an eight (8) month period. She testified that she had last seen a doctor six (6) months prior to the administrative hearing, but the administrative record, which is 765 pages, contains no record of such visit. There simply is no evidence of treatment after her last physical therapy visit to Arkansas Children's Hospital Burn Clinic on January 17, 2002 (T. 725). This, despite the fact that the ALJ, at the close of the hearing and without request, left the record open for thirty days and advised counsel to let him know if additional time was needed, and assured counsel that such a request would be granted (T. 765). No evidence was submitted after the administrative hearing, either to the ALJ or to the Appeals Council. Thus, it is clear that plaintiff has not met the durational requirement of the statute.

Additionally, we have considered the record in its entirety, and find that the ALJ has done a thorough job of evaluating the plaintiff's credibility. He discussed the objective medical evidence extensively (T. 13-15). In addition, he found that the medical evidence indicates that plaintiff made a good recovery from her wrist injury and burns, and has neither required nor received additional medical treatment or physical therapy for any of her symptoms since January 17, 2002. This is inconsistent with plaintiff's claims of disability. *Singh v. Apfel, 222 F.3d 448, 453 (8th Cir.2000).* Plaintiff also testified at hearing that she had not taken prescription pain medication for over a year (T. 746-747). See *Depover v. Barnhart, 349 F.3d*

*563, 566 (8th Cir.2003)*. The ALJ also considered the plaintiff's daily activities, and found that they were more self-limited after January 17, 2002, rather than as a result of any actual functional restrictions. The record contains no evidence of physician-imposed restrictions after January 17, 2002. Plaintiff reported on August 20, 2001, just three to four months after the burn accident and fractured wrist, the ability to: dress; care for her hair; do laundry, dishes, and change sheets; prepare sandwiches and frozen dinners; pay bills, use a checkbook and count change; drive short distances, walk for limited periods for exercise and use public transportation; and, attend church, watch television and listen to the radio (T. 75-76). In a document completed on May 24, 2001, just weeks after her accident, plaintiff reported an ability to walk, read, write, garden, talk, listen to music and play cards. She also enjoyed watching television, primarily game shows and "soaps." (T. 652). The ALJ concluded such activities are not consistent with plaintiff claims of disability.

The ALJ next evaluated the duration, frequency and intensity of plaintiff's alleged pain and other symptoms, finding a lack of objective evidence to support the continued claims, a lack of medical treatment, medication and physician-placed restrictions for same (T. 16). Considering the dosage, effectiveness and side effects of plaintiff's medications, the ALJ concluded:

> If the claimant was experiencing severe debilitating pain on a daily or even weekly basis, it is reasonable to assume she would have more regularly and more recently sought medical treatment and would take medication to relieve that pain (Benskin v. Bowen, 830 F.2d 878 (8th Cir.1987). Failure to take strong medication is a factor that can be used to discredit subjective allegations of pain (Wingert v. Bowen 894 F.2d 296 (8th Cir.1990).

(T. 16).

AO72A
(Rev. 8/82)

Finally, the ALJ summarized:

> The undersigned [ALJ] has considered the medical evidence, the testimony and the above-numerated factors. The appearance and demeanor of the claimant have also been considered. While it is recognized and accepted that the claimant's severe impairments could be expected to cause some slight limitations, nothing in the record documents that the claimant is restricted to the point that she is incapable of performing all basic work-related activities. Therefore, the ALJ finds the claimant credible only in so far as her allegations are supported by the medical evidence of record and only to the extent that she would be limited to the performance of less strenuous sedentary and/or light work activity. The undersigned cannot find the claimant's allegations that she is incapable of all work activity to be fully credible.

(T. 16-17). The Court agrees. The ALJ has considered the plaintiff's subjective allegations and nonexertional limitations pursuant to the criteria set forth in *Polaski*, and found that they lack credibility. Substantial evidence supports this determination, as well as the ALJ's residual functional capacity determination.

Because the ALJ determined that the plaintiff was unable to return to her past relevant work, the burden of persuasion shifted to the Commissioner to show that plaintiff was able to engage in work in the national economy. *Sanders v. Sullivan, 983 F.2d 822, 823 (8th Cir.1992)*. In the present case, the ALJ utilized the testimony of a vocational expert (hereinafter "VE"), to reach his decision that plaintiff was not disabled. When, as here, the ALJ finds the plaintiff's nonexertional impairments significantly diminish his or her residual functional capacity to perform the full range of activities listed in the Guidelines, the Commissioner must produce expert vocational testimony or other similar evidence to establish that there are jobs available in the national economy for a person with the plaintiff's characteristics. *Thompson, 850 F.2d at 349;* see also *Harris v. Shalala 45 F.3d 1190, 1194 -1194 (8th Cir.1995).*

Nonexertional limitations are limitations other than on strength but which nonetheless

reduce an individual's ability to work. Examples are mental, sensory or skin impairments, as well as impairments which result in postural and manipulative limitations or environmental restrictions. See *20 C.F.R. Subpart P, Appendix 2, § 200.00(e) (1986)*. Pain is a nonexertional impairment. See *Beckley v. Apfel 152 F.3d 1056, 1059 (8th Cir.1998); Cline, 939 F.2d 560, 565 (8th Cir.1991)*.

The plaintiff contends that the ALJ erred in that the "in-house Vocational Analyst stated that the Plaintiff <u>cannot return</u> to past relevant work (TR 64)" (Doc. #5, p. 24) (emphasis in original). Arguing further, the plaintiff alleges the ALJ "did not resolve the conflict between the Opinion and that of the Vocational Analyst for the State" (Doc. #5, p. 24). However, the ALJ acknowledged and considered the opinions of state agency medical consultants, in accordance with Social Security Ruling 96-6p (T. 17). It should also be noted that the vocational analyst is just that, and not a medical doctor. Finally, the ALJ did not "summarily dismiss" the analysts' findings, but rather, declined to entirely adopt them with regard to residual functional capacity, noting that nevertheless, the conclusions were supportive of the ALJ's ultimate findings that plaintiff retains the residual functional capacity to perform work activity, and that she is not disabled (T. 17).

**Conclusion:**

Accordingly, the undersigned concludes that the decision of the ALJ, denying benefits to the plaintiff, is supported by substantial evidence of record and should be affirmed. The Court also finds that the plaintiff's Complaint should be dismissed with prejudice.

ENTERED this 23rd day of August, 2005.

AO72A
(Rev. 8/82)

    /s/ Bobby E. Shepherd
 HONORABLE BOBBY E. SHEPHERD
 UNITED STATES MAGISTRATE JUDGE